UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| TRISH REED, | ) | Case No. 16-41315-705 |
| | ) | Chief Judge Kathy A. Surratt-States |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| HOUSING AUTHORITY OF | ) | **Adversary No. 16-4093-659** |
| ST. LOUIS COUNTY, | ) | |
| | ) | **PUBLISHED** |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| TRISH REED, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The matter before the Court is Housing Authority of St. Louis County's Complaint Objecting to Discharge of Debtor and Debtor's Answer to Housing Authority's Complaint Objecting to Discharge of Debtor. A trial was held on December 13, 2016, at which Plaintiff appeared by counsel and Debtor appeared *pro se.* The parties presented oral argument and testimony. Upon consideration of the record as a whole, the Court makes the following **FINDINGS OF FACT**:

Plaintiff Housing Authority of St. Louis County (hereinafter "HASLC") is a municipal corporation of the State of Missouri. HASLC administers the Section 8 low-income rental subsidy program for the United States Department of Housing and Urban Development in St. Louis County, Missouri. Debtor Trish Reed (hereinafter "Debtor") received rental subsides from HASLC from 2006 to 2008 based on her reported household income. HASLC requires its program participants, including all adults in the household, to report their total household income annually by completing a Personal Declaration. According to the Personal Declaration, total household

income includes money from wages, self employment, and social security. *See* Plaintiff's Exhibits 1, 3, and 6. Further, the Personal Declaration requires each adult member of the household to certify the following:

> I, do hereby swear and attest that all the information about me is true, correct and complete. I also understand that all <u>changes</u> in the income of any member of the household as well as <u>any changes</u> in the household members must be reported to the Housing Authority in <u>WRITING WITHIN 10 DAYS FROM THE DATE OF OCCURANCE[sic]</u>. (emphasis in original).

*See* Plaintiff's Exhibits 1, 3 and 6.

On September 29, 2006, due to Debtor's failure to accurately report her household income, Debtor signed a Reimbursement Agreement with HASLC in which she agreed, "to reimburse the Housing Authority of St. Louis County $2,224.00 for unreported income during 2006". *See* Plaintiff's Ex. 5. Debtor made the following acknowledgment in the Reimbursement Agreement:

> I understand and acknowledge that my failure to report the full amount of my income to the Housing Authority was fraudulent under the law. . . . I also understand and agree that if I should file bankruptcy, the Housing Authority shall be entitled to object to the discharge of the amount owed by me on the ground that it is a debt resulting from fraud and not a mere contractual liability.

*See* Plaintiff's Exhibit 5. Debtor has an outstanding balance of $1,874.00 under the Reimbursement Agreement.

In 2009, during the HASLC annual re-certification process, Debtor executed a Personal Declaration upon which she reported that no one in her household was employed. *See* Plaintiff's Exhibit 6. By signing the Personal Declaration, Debtor further attested the information provided therein was true and if there were any changes in the income of members of the household, including her husband (hereinafter "Mr. Reed") it must be reported to HASLC in writing within 10 days. *Id.* HASLC, upon receipt of the 2009 Personal Declaration, requested Debtor's 2008 tax return to confirm her employment status. After reviewing Debtor's joint tax return, HASLC discovered that Debtor and Mr. Reed earned $22,513.00 in business income in 2008. *See* Plaintiff's

Exhibit 2. This information prompted HASLC to request Debtor's 2007 joint tax return and review Debtor's 2007 Personal Declaration which similarly stated that no one in Debtor's household was employed.  However, Debtor's 2007 tax return showed that Debtor in fact earned income in 2007. Thus, Debtor under reported her total household income in her 2007, 2008 and 2009 Personal Declarations.  As a result, Debtor received $6,820.00 in rental subsidies for which HASLC alleges that she was not entitled.

At trial, Susan White (hereinafter "Ms. White"), an employee of HASLC testified about Debtor's HASLC file.  Ms. White has worked at HASLC over 36 years and her duties include working as a rental subisdy program case worker for 15 years. Ms. White was assigned Debtor's file after it was brought to her attention that there was excess business income that went unreported on Debtor's 2008 Personal Declaration.  Ms. White further testified that she reviewed Debtor's Personal Declarations for 2009, 2008, and 2007 for which no business income was reported. *See* Plaintiff's Exhibit 1, 3, and 6. Ms. White calculated the overpayment of rental assistance by determining what should have been paid to the Debtor and her household from what was actually paid to Debtor.  Ms. White determined the amount of the overpayment to be $6,820.00. The total overpayment amount allowed for a participant to stay in the program is $3,000.00.  Ms. White stated that the 2006 overpayment for which Debtor entered the Reimbursement Agreement was under the $3,000.00 threshold, thus allowing her continue in the rental subsidy program, but the newly calculated overpayment was in excesses of that amount.

HASLC then informed Debtor that she would no longer be eligible to receive rental subsidies if she did not reimburse HASLC within 30 days for the overpayment.  Debtor never reimbursed HASLC, and a subsequent administrative hearing determined that Debtor would be removed from HASLC's Section 8 low-income rental program. On February 29, 2016, Debtor filed her Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code.  On June 1, 2016, Debtor received a discharge. On July 18, 2016, HASLC filed this adversary proceeding after being granted leave due

-3-

to Debtor's failure to list HASLC on the creditor matrix. HASLC filed this adversary proceeding under section 523(a)(2)(B) objecting to the discharge of debt owed to Plaintiff in the sum of $8,694.00, consisting of $1,874.00 form the Reimbursement Agreement and $6,820.00 overpayment.

Debtor generally denies all of Plaintiff's allegations. Debtor states that she did not try to defraud HASLC and that her non-filing spouse, Mr. Reed, managed the household finances, including filing their joint tax returns. Debtor states that at the time HASLC brought the issue of unreported business income to her family's attention, Mr. Reed suffered from severe health problems and could not respond to HASLC's requests.  Debtor believes that she did not intend to deceive HASLC in any way.

## JURISDICTION

The Court has jurisdiction over the parties and subject matter of the this proceeding under 28 U.S.C. §§ 151, 157, and 1334 (2016) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (2016). Venue is proper in this District under 28 § 1409(a) (2016).

## CONCLUSIONS OF LAW

Under Section 523(a)(2)(B), any debt obtained for money, property, services, or an extension, revneual, or refining of credit, to the extent obtained by use of a statement in writing

> (i) that is materially false;
> (ii) respecting the debtor's or insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive will be excepted from discharge.

11 U.S.C. § 523(a)(2)(B) (2016); *In re Binns*, 328 B.R. 126, 130 (B.A.P. 8th Cir. 2005). The elements must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).  For purposes to Section 523(a)(2)(B), a

-4-

statement is materially false if it "paints a substantially untruthful picture of a [debtor's] financial condition by a misrepresentation information of the type which would normally affect the decision to grant credit." *In re Bohr*, 271 B.R. 162, 167 (Bankr. W.D. Mo. 2001) (citation omitted).

The plaintiff must demonstrate both that it actually relied upon the false financial statement and that its reliance was reasonable under the circumstances. *Teachers Credit Union v. Johnson*, 131 B.R. 848, 854 (W.D. Mo. 1991). Partial reliance is all that is necessary; the financial statement need only be a contributing cause to the decision to extend credit. *Johnson*, 131 B.R. at 854. The reasonableness of the creditor's reliance on the financial statement is based on an assessment of the totality of the circumstances. *First Nat. Bank Of Olathe, Kan. v. Pontow*, 111 F.3d 604, 610 (8th Cir. 1997); *In re Ghere*, 393 B.R. 209, 216 (Bankr. W.D. Mo. 2008); *In re Bohr*, 271 B.R. at 168. The court may consider if there were any "red flags" that would have alerted the creditor to the possibility that the financial statement was not accurate and whether minimal investigation would have revealed the inaccuracy. *First Nat. Bank of Olathe, Kan. V. Pontow* (citing *In re Coston*, 991 F.2d 257, 261 (5th Cir. 1993 (en banc)).

The debtor may have produced a statement with intent to deceive without having a malignant heart; actual malice is not required. *In re Webb*, 256 B.R. 292, 297 (Bankr. E.D. Ark. 2000); *In re Ghere*, 393 B.R. at 215; *In re Bohr*, 271 B.R. at 169.  A creditor may establish intent to deceive by proving that debtor knew the statement was false or that debtor acted with reckless indifference to or reckless disregard of the accuracy of the information in debtor's financial statement. *In re McCleary*, 284 B.R. 876, 888 (Bankr. N.D. Iowa 2002); *In re Ghere*, 393 B.R. at 215; *In re Bohr*, 271 B.R. at 169. Because direct evidence of such intent is often absent it may be inferred from the circumstances. *In re Ghere*, 393 B.R. at 215. The debtor cannot overcome an inference of intent to deceive merely with unsupported assertions of honest intent. *In re Ghere*, 393 B.R. at 215; *In re Bohr*, 271 B.R. at 169. "It is well established that writings with pertinent omissions can readily constitute a statement that is materially false for purposes of Section 523(a)(2)(B)."

-5-

*In re McCleary*, 284 B.R. at 885 (citing *In re Dammen*, 167 B.R. 545, 551 (Bankr. D.N.D.1994)).

In the present case, Debtor made a written statement regarding her finances when she stated in her Personal Declarations that no one in her household was employed. In 2006, 2007 and 2008, HASLC relied on Debtor's financial condition as reported in the Personal Declarations in their decision to extend rental assistance. The Court finds that it was reasonable for HASLC to rely on those statements and subsequently verify the accuracy of those statements. The statements made by Debtor in her 2007, 2008, and 2009 Personal Declarations were materially false because they painted an untruthful picture to HASLC of her financial condition. Though Debtor attested that she was unemployed, Mr. Reed, in fact, contributed to the household through business income; therefore, the income provided in their joint tax return or any other financial changes from the date of Debtor's last signed Personal Declaration should have been reported to HASLC.

Now, the question remaining for the Court is whether Debtor had the requisite intent to deceive HASLC. Debtor argues that she did not intend to deceive HASLC because she neither had knowledge of her husband's business income nor control of her household finances. Debtor argues that her husband was solely responsible for her household finances, including completing their joint tax return, and documenting any income that they received. However, the Court notes that the Personal Declarations that were signed by both Debtor and Mr. Reed strictly advised them as adults in the household to report all changes in income. Here, neither Debtor nor her husband abided by this requirement as participants in the rental subsidy program. Even if Debtor had no dealings with the family finances, she had an obligation to follow the requirements of the program and report the total income or any changes in income so that HASLC would be aware of funds available to Debtor in order for Plaintiff to determine the amount of rental assistance Debtor was entitled to receive. Debtor failed to report additional household income with the intent to deceive

-6-

Plaintiff.  Therefore, the debt owed to HASLC is excepted from discharge. By separate order,

judgment will be entered in favor of HASLC.


*Kathy A. Surratt-States*

KATHY A. SURRATT-STATES
Chief United States Bankruptcy Judge


DATED:  April 26, 2017
St. Louis, Missouri


Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Housing Authority of St. Louis County
c/o Jacobson Press & Fields P.C.
168 N. Meramec Avenue - Suite 150
Clayton, MO 63105

Matthew B Vianello
Jacobson Press & Fields, P.C.
168 N. Meramec Avenue - Suite 150
Clayton, MO 63105

Trish Reed
4358 Blythewood Dr
Florissant, MO 63033